UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| SHARON ANITA MASSEY,<br><br>  Plaintiff,<br><br>v.<br><br>SOCIAL SECURITY ADMINISTRATION,<br><br>  Defendant. | Case No. 1:20-cv-00030<br><br>Judge William L. Campbell, Jr.<br>Magistrate Judge Alistair E. Newbern |

To:   The Honorable William L. Campbell, Jr., District Judge

## REPORT AND RECOMMENDATION

Plaintiff Sharon Anita Massey filed this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) denying her application for supplemental security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383f. (Doc. No. 1.) The Court referred this action to the Magistrate Judge to dispose or recommend disposition of any pretrial motions under 28 U.S.C. § 636(b)(1)(A) and (B). (Doc. No. 5.) Before the Court is Massey's motion for judgment on the administrative record (Doc. No. 22), to which the Commissioner has responded in opposition (Doc. No. 24), and Massey has filed a reply (Doc. No. 25). Having considered the parties' arguments and the administrative record as a whole, and for the reasons that follow, the Magistrate Judge will recommend that Massey's motion for judgment on the administrative record be granted.

**I.     Background**

   **A.     Massey's SSI Application**

Massey applied for SSI on May 4, 2017, alleging that she has been disabled and unable to work since July 20, 2009, as a result of degenerative disc disease and arthritis. (AR 94.[1]) Massey later amended her alleged onset date to May 4, 2017. (AR 31.) The Commissioner denied Massey's application initially and on reconsideration. (AR 113, 136.) At Massey's request, an administrative law judge (ALJ) held a hearing regarding her application on November 20, 2018. (AR 43–75, 150–52.) Massey appeared with counsel and testified. (AR 45, 49–56, 59–68.) The ALJ also heard testimony from Dr. Daniel Lustig, a vocational expert. (AR 56–61, 69–72.)

   **B.     The ALJ's Findings**

On March 4, 2019, the ALJ issued a written decision finding that Massey was not disabled within the meaning of the Social Security Act and applicable regulations and denying her claim for SSI. (AR 10–20.) The ALJ made the following enumerated findings:

> 1.     The claimant has not engaged in substantial gainful activity since May 4, 2017, the application date (20 CFR 416.971 *et seq.*).
>
> 2.     The claimant has the following severe impairments: obesity, degenerative disc disease, arthritis, and bipolar disorder (20 CFR 416.920(c)).
>
> \*     \*     \*
>
> 3.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> \*     \*     \*
>
> 4.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can frequently climb ramps or stairs,

---

[1]     The transcript of the administrative record (Doc. No. 20) is referenced herein by the abbreviation "AR." All page numbers cited in the AR refer to the Bates stamp at the bottom right corner of each page.

balance, stoop, kneel, crouch or crawl but can never climb ladders, ropes or scaffolds. She can stand and/or walk for four hours in an eight hour day, and sit for seven hours in an eight hour day. The claimant can perform detailed tasks but only have occasional interaction with the public and changes in the workplace should be introduced gradually.

\* \* \*

5. The claimant is capable of performing past relevant work as a packager and cashier. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

\* \* \*

6. The claimant has not been under a disability, as defined in the Social Security Act, since May 4, 2017, the amended alleged onset date (20 CFR 416.920(f)).

(AR 12–19.) The Social Security Appeals Council denied Massey's request for review on March 30, 2020, making the ALJ's decision the final decision of the Commissioner. (AR 1–6.)

### C. Appeal Under 42 U.S.C. § 405(g)

Massey filed this action for review of the ALJ's decision on May 30, 2020 (Doc. No. 1), and this Court has jurisdiction under 42 U.S.C. § 405(g). Massey argues that the ALJ improperly evaluated medical opinion evidence in the record and erred in finding that Massey could perform her past work as a cashier and packager. (Doc. No. 23.) The Commissioner responds that the ALJ properly evaluated the medical opinions in the record under applicable SSA regulations and properly found that Massey could perform her past work as a packager. (Doc. No. 24.) The Commissioner concedes that the ALJ erred in finding that Massey could perform her past work as a cashier, but argues that this error was harmless and does not justify remand. (*Id.*) Massey's reply reiterates her arguments. (Doc. No. 25.)

### D. Review of the Record

The ALJ and the parties have thoroughly described and discussed the medical and testimonial evidence in the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## II. Legal Standards

### A. Standard of Review

This Court's review of an ALJ's decision is limited to determining (1) whether the ALJ's findings are supported by substantial evidence and (2) whether the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is less than a preponderance but "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co.*, 305 U.S. at 229); *see also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (same). Further, "[t]he Social Security Administration has established rules for how an ALJ must evaluate a disability claim and has made promises to disability applicants as to how their claims and medical evidence will be reviewed." *Gentry*, 741 F.3d at 723. Where an ALJ fails to follow those rules or regulations, "we find a lack of substantial evidence, 'even where the conclusion of the ALJ may be justified based upon the record.'" *Miller*, 811 F.3d at 833 (quoting *Gentry*, 741 F.3d at 722).

### B.     Determining Disability at the Administrative Level

Massey applied for SSI under Title XVI of the Social Security Act, which "is a welfare program" that provides "benefits to financially needy individuals who are aged, blind, or disabled regardless of their insured status." *Bowen v. Galbreath*, 485 U.S. 74, 75 (1988). "Disability" is defined in this context as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (explaining that this definition applies to SSI claims under Title XVI as well as disability insurance benefit claims under Title II).

ALJs must employ a "five-step sequential evaluation process" to determine whether a claimant is disabled, proceeding through each step until a determination can be reached. 20 C.F.R. § 416.920(a)(4). At step one, the ALJ considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). "If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis." *Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 554 n.2 (6th Cir. 1995). At step two, the ALJ determines whether the claimant suffers from "a severe medically determinable physical or mental impairment" or "combination of impairments" that meets the 12-month durational requirement. 20 C.F.R. § 416.920(a)(4)(ii). "If the claimant does not have a severe impairment or combination of impairments, benefits are denied without further analysis." *Garcia*, 46 F.3d at 554 n.2. At step three, the ALJ considers whether the claimant's medical impairment or impairments appear on a list maintained by the SSA that "identifies and defines impairments that are of sufficient severity as to prevent any gainful activity." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); *see* 20 C.F.R. § 416.920(a)(4)(iii). "If the severe impairment meets or equals one of the impairments listed in the regulations, the claimant

is conclusively presumed to be disabled without further analysis." *Garcia*, 46 F.3d at 554 n.2. If not, the ALJ proceeds to step four.

At step four, the ALJ evaluates the claimant's past relevant work and "residual functional capacity" 20 C.F.R. § 416.920(a)(4), which is defined as "the most [the claimant] can still do despite [her] limitations" *id.* § 416.945(a)(1); *see id.* § 416.920(a)(iv). Past work is relevant to this analysis if the claimant performed the work within the past 15 years, the work qualifies as substantial gainful activity, and the work lasted long enough for the claimant to learn how to do it. *Id.* § 416.960(b)(1). If the claimant's residual functional capacity (RFC) permits her to perform past relevant work, "benefits are denied without further analysis." *Garcia*, 46 F.3d at 554 n.2. If a claimant cannot perform past relevant work, the ALJ proceeds to step five and determines whether, in light of her residual functional capacity, age, education, and work experience, a claimant can perform other substantial gainful employment. 20 C.F.R. § 416.920(a)(4)(v). While the claimant bears the burden of proof during the first four steps, at step five the burden shifts to the Commissioner to "identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011). "If the claimant is able to perform other work in the national economy, . . . benefits are denied." *Garcia*, 46 F.3d at 554 n.2. If the claimant is unable to perform other work, the ALJ will find that the claimant is disabled.

**III.     Analysis**

Massey argues that the ALJ improperly evaluated a medical source statement from her treating physician, Dr. Melvin Butler, as compared to a consulting medical opinion from Dr. William Robinson, II, M.D. (Doc. No. 23.) She further argues that the ALJ erred in finding that should could perform her past work as either a cashier or packager. (*Id.*)

### A. The ALJ's Analysis of Medical Opinion Evidence

#### 1. Applicable Regulations

For SSI claims filed on or after March 27, 2017, SSA regulations provide that the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from [the claimant's] medical sources."[2] 20 C.F.R. § 416.920c(a). Instead, the ALJ must "evaluate the persuasiveness" of all medical opinions based on five factors listed in paragraphs (c)(1) to (c)(5) of 20 C.F.R. § 416.920c: (1) supportability; (2) consistency; (3) relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors, including but not limited to evidence showing that the medical source is familiar with other evidence in the record or has an understanding of the SSA's policies and evidentiary requirements. *Id.* § 416.920c(a), (c)(1)–(5).

Supportability and consistency are "[t]he most important factors" in this analysis. *Id.* § 416.920c(a). "Supportability" directs that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." *Id.* § 416.920c(c)(1).

---

[2] This is a departure from the regulations governing claims filed before March 27, 2017, which "[g]enerally . . . g[a]ve more weight to medical opinions from [the claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations[.]" 20 C.F.R. § 416.927(c)(2). Those regulations specifically required an ALJ to give controlling weight to a medical opinion from the claimant's treating physician if the opinion was "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [was] not inconsistent with other substantial evidence in [the] case record[.]" *Id.*

Similarly, "consistency" directs that "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 416.920c(c)(2).

The SSA has promised claimants that it "will explain how [it] considered the supportability and consistency factors . . . in [its] determination or decision" and "may, but [is] not required to, explain how [it] considered the factors in paragraphs (c)(3) through (c)(5) . . . ."[3] *Id.* § 416.920c(b)(2). However, if the SSA "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [it] will articulate how [it] considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) . . . ." *Id.* § 416.920c(b)(3).

"A reviewing court 'evaluates whether the ALJ properly considered the factors as set forth in the regulations to determine the persuasiveness of a medical opinion.'" *Toennies v. Comm'r of Soc. Sec.*, No. 1:19-CV-02261, 2020 WL 2841379, at *14 (N.D. Ohio June 1, 2020) (quoting *Ryan L.F. v. Comm'r of Soc. Sec.*, No. 6:18-cv-01958, 2019 WL 6468560, at *4 (D. Or. Dec. 2, 2019)).

### 2. Dr. Butler's and Dr. Robinson's Medical Opinions

Dr. Butler is a physician at the Tennessee Department of Health in Lawrence County, Tennessee. (AR 61, 467.) Medical records from 2015 show that Massey was "[r]eferred to [the] Lawrence County Health Department since [she] ha[d] no insurance or no income and need[ed] treatment with labs [and] medication." (AR 379.) The record contains treatment notes signed by Dr. Butler for five appointments with Massey between January 5, 2017, and September 29, 2018.

---

[3] This differs from the regulations governing claims filed before March 27, 2017, which promised claimants that the SSA would "always give good reasons in [its] notice of determination or decision for the weight [it] g[a]ve [the] treating source's medical opinion." 20 C.F.R. § 416.927(c)(2).

(AR 448–51, 477–80, 497–98.) Dr. Butler also completed a medical source statement and an accompanying letter for Massey on March 16, 2018. (AR 465–67.)

In the medical source statement, Dr. Butler listed Massey's diagnoses as "[l]ow back pain; degenerative cervical and lumbar disease; 2 vacuum discs; hypertension[;] chondromalacia of knees; [and] left shoulder pain[.]" (AR 465.) Dr. Butler indicated that, without considering Massey's "[a]ge and body habitus[,]" Massey could occasionally lift ten pounds and frequently lift five pounds; stand and walk for one hour total in an eight-hour workday in increments of fifteen minutes at a time; sit for one hour total in an eight-hour workday for an hour at a time; occasionally bend, stoop, and balance; frequently use both hands for gross and fine manipulation; never raise her left arm above shoulder level; occasionally lift her right arm above shoulder level; occasionally work around dangerous equipment and operate motor vehicles; frequently tolerate heat and constantly tolerate cold; occasionally tolerate exposure to dust, smoke, or fumes; and frequently tolerate noise. (*Id.*) Dr. Butler further indicated that Massey had limited close vision and would frequently need to elevate her legs during an eight-hour workday. (AR 466.) Dr. Butler characterized Massey's pain as moderate and stated that she would occasionally "experience pain severe enough to interfere with attention and/or concentration[.]" (*Id.*) He also indicated that Massey suffered from mild fatigue and that he would expect Massey to miss work two days a month because of her impairments. (*Id.*) Under a section marked "[c]omments and/or findings which support the above conclusions[,]" Dr. Butler incorporated an attached letter. (*Id.*)

Dr. Butler's letter describes CAT scan results that, in his opinion, support his asserted limitations on Massey's ability to lift, sit, stand and walk. (AR 467.) He describes Massey's knee pain, mentions that she had knee surgery that did not resolve this pain, and explains that Massey's knee pain contributes to her trouble standing and walking for long periods of time and to her need

9

to elevate her legs. (*Id.*) Dr. Butler states that "Massey rates her pain as moderate to severe but does not take any controlled substances for her pain." (*Id.*) He further states that "she would most likely need to miss over four days of work per month" "[g]iven her body habitus and her . . . spine, knee and hip problems . . . ." (*Id.*)

Dr. Robinson is a consulting physician who examined Massey on July 22, 2017, in connection with her SSI application. (AR 453–57.) Dr. Robinson noted in the patient history section of his report that Massey "had a CAT scan about a month ago, but does not know the results." (AR 454.) His musculoskeletal and neurological findings on examination were as follows:

> MUSCULOSKELETAL: Please see the ranges of motion. There is some mild restriction in the left shoulder and some in her lumbar spine. No redness, swelling, joint enlargement, muscle wasting or anatomic deformity. Straight leg raising; however, on the left is positive at 60 degrees. Upper extremity pinch, grip strength, fine and gross manipulation are normal. Negative Tinel's and Phalen's.
>
> NEUROLOGICAL: Cranial nerves II through XII are grossly intact. Reflexes are 2+ patellar, Achilles, biceps and radial bilaterally. Strength is 5/5 in bilateral upper and lower extremities. No motor aphasia. No sensory loss. There is tenderness in the lumbar spine region, apparently exquisite tenderness. She has osteoarthritic changes in both knees with some thickening noted over the joint capsule. Strength is 5/5 in bilateral upper and lower extremities. She cannot do heel-to-toe walk and her standard walking is flat footed and slow, but not really ataxic. She cannot arise from a seated position without the use of her arms. She did have trouble getting off and on the exam table. In fact, she had a lot of trouble and had to be helped upon the exam table and most probably because of obesity and also because of the back pain. No sensory loss.

(AR 456.) Dr. Robinson provided the following summary of his examination of Massey:

> This is a 56-year-old massively obese lady, who had a degenerative disc disease of her back with some marked tenderness, positive left straight leg raising, but no muscle spasms and a normal neurological examination without sensory loss or abnormal reflexes.
>
> She has what she describes as arthritis and has mostly problems with the left shoulder, where she has some fairly normal exam except with mild restrictions of ranges of motion, but no tenderness. She also has problems with hands, ankles and feet but had no osteoarthritic changes in these joints.
>
> She is massively obese.

(AR 456–57.)

> Dr. Robinson offered the following assessment of Massey's functional limitations:
>
> Based on my findings and observations, I am estimating that she can lift 20 lbs two hours a day and 10 lbs four hours a day and carry about the same. Restrictions are mainly due to back pain and obesity, especially the obesity. She has trouble moving about all day because of obesity. She can sit; however, about seven hours and stand and walk four hours a day. There will be pretty mild restrictions to pushing, pulling, stooping, squatting, kneeling, crouching and crawling because of her obesity. She could not climb ladders or scaffolds and she would have much trouble walking up and down stairs. She does not use an assistive device and probably does not need one.
>
> She has normal gross manipulation and grip strength. She can hear and understand normal conversational speech.

(AR 457.)

### 3. The ALJ's Analysis of Dr. Butler's and Dr. Robinson's Medical Opinions

The ALJ analyzed Dr. Butler's and Dr. Robinson's medical opinions as follows:

> The claimant's treating physician, Dr. Melvin Butler, completed a medical source statement noting the claimant has a diagnosis of degenerative disc disease cervical and lumbar spine, hypertension, chondromalacia of knees and left shoulder pain. Dr. Butler opined the claimant [can] lift 10 pounds occasionally, five pounds frequently, and sit, stand and/or walk for one hour each in an eight hour workday. Dr. Butler further opined the claimant [can] occasionally bend, stoop, and balance, but can frequently use both of her hands for fine or gross manipulation. He went on to opine that she can never raise her left arm over shoulder level but can occasionally raise her right arm over shoulder level, work around dangerous equipment, operate a motor vehicle, and tolerate respiratory irritants. Dr. Butler opined the claimant can frequently tolerate heat, would need to frequently elevate her legs during an eight hour workday, suffers from pain that is moderate, would miss work two days a month and only occasionally experiences pain severe enough to interfere with attention and/or concentration. Dr. Butler concluded by noting the claimant rates her pain as moderate to severe but does not take any controlled substances for her pain (Exhibit C9F).
>
> The claimant underwent a consultative examination conducted by William Robinson, M.D., on July 22, 2017. The claimant reported she has been diagnosed with degenerative disc disease and significant lower back pain that is made worse with standing, lifting, twisting, turning and walking or any activity requiring her to be on her feet. She further reported she does not take any medication except for Tylenol which does provide some relief. Physical examination showed the claimant

was obese with a BMI of 47.9, she was unable to do heel to toe walk, and standard walking is flat footed and slow. The claimant was unable to arise out of a seated position without the use of her arms, experienced trouble getting on and off the examination table, and showed positive straight leg raising was positive on the left. The remainder of the examination was unremarkable. Dr. Robinson diagnosed degenerative disc disease of the lumbar spine, arthritis and morbid obesity. Dr. Robinson opined the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently in an eight hour workday, can sit for approximately seven hours and stand and/or walk for four hours a day. Dr. Robinson further opined the claimant will have mild restrictions to pushing, pulling, stooping, squatting, kneeling, crouching and crawling due to obesity, but cannot climb ladders, or scaffolds and would have trouble walking up and down stairs (Exhibit C7F).

* * *

As for medical opinion(s) and prior administrative medical finding(s), we will not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from your medical sources. We fully considered the medical opinions and prior administrative medical findings in your case as follows: the undersigned finds the opinion of Dr. Robinson (Exhibit C7F) persuasive because clinical testing does not show any nerve root impingement and his opinion is consistent with his examination as well as the other objective medical evidence in the record . . . . The undersigned finds the opinion of Dr. Butler (Exhibit C9F) less persuasive because it is not consistent with his own treatment notes, and the limitations appear to be based solely on the claimant's subjective complaints.

Furthermore, the treatment relationship with the doctors is very limited and appears to be within the scope of the claimant's efforts to obtain disability benefits as opposed to seeking actual ongoing treatment. It is specifically noted within the treatment records that the claimant is seeking assistance with her disability claim. The combination of these factors reduce the probative value of these opinions, most particularly the lack of objective observation of the claimant's functional ability during a physical examination.

To the contrary, the consultative examiner conducted objective testing that noted normal range of motion, and normal strength. Dr. Robinson noted his observations of the claimant's functional abilities and considered this objective medical evidence in comparison to the claimant's subjective complaints. As a result, the consultative examination is a much more well-reasoned evaluation and opinion of the claimant's functional capabilities. It provides more objective probative value regarding the claimant's residual functional capacity.

(AR 16–18.)

Massey argues that Dr. Butler's opinion is at least as supported by and consistent with the record evidence as Dr. Robinson's and that the ALJ therefore violated 20 C.F.R. § 416.920c(b)(3) because he did not articulate how he considered the factors under paragraphs (c)(3) through (c)(5) with respect to Dr. Butler's opinion. (Doc. No. 23.) The Commissioner responds that, under 20 C.F.R. § 416.920c(b)(3), the ALJ only needs to explain his consideration of these other factors if the ALJ (not Massey) determines that two medical opinions are equally persuasive, and the ALJ did not make that finding here. (Doc. No. 24.) Massey maintains in her reply that the ALJ must consider and explain the paragraph (c)(3) through (c)(5) factors "when the record contains more than one opinion that must be reasonably found persuasive."[4] (Doc. No. 25, PageID# 607.)

This Court agrees that a plain reading of the regulation supports a finding that the SSA has only promised to "articulate how [it] considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section" "[w]hen [it] find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same[.]" 20 C.F.R. § 416.920c(b)(3). Because the ALJ did not find that Dr. Butler's and Dr. Robinson's opinions were equally well-supported and consistent with the record, he was not required to explain his consideration of the factors in paragraphs (c)(3) through (c)(5) with respect to these opinions. However, the Court must still evaluate whether the ALJ properly considered and explained the supportability and consistency factors in paragraphs (c)(1) and (c)(2). *See Toennies*, 2020 WL 2841379, at *14.

---

4   Massey relies on *Hinton v. Saul*, No. 4:19-CV-00117, 2020 WL 1430476, at *5 (W.D. Ky. Mar. 23, 2020). In that case, the court found that "the ALJ was not required to articulate how she considered the other factors in paragraphs (c)(3) through (c)(5) of the regulation" because that "requirement applies only when an administrative law judge finds that two or more medical opinions about the same issue are both equally well supported and consistent with the record but are not exactly the same."

The ALJ found that Dr. Butler's medical source statement was "less persuasive because it is not consistent with his own treatment notes, and the limitations appear to be based solely on the claimant's subjective complaints." (AR 18.) Neither of these statements is supported by substantial record evidence. Dr. Butler's signed treatment notes from April 13, 2017, show that Dr. Butler found abnormal musculoskeletal findings upon physical examination (AR 448) and diagnosed Massey with degenerative disc disease and chronic back pain (AR 449). Dr. Butler's signed treatment notes from November 16, 2017, show that he diagnosed Massey with back, cervical, and thoracic pain. (AR 480.) His signed treatment notes from March 1, 2018, show that Dr. Butler diagnosed Massey with chronic spine pain. (AR 478.) His treatment notes from September 29, 2018, describe spinal imaging showing moderate degenerative disc disease at multiple levels, cervical spondylosis, osteophytes and vacuum disc phenomenon in the lower thoracic region, and severe facet arthrosis and degenerative spondylolisthesis in the lumbar area. (AR 497.)

The Commissioner points to treatment records from August 10, 2017, that include a checked box for normal musculoskeletal findings (AR 481) and argues that these records support the ALJ's finding that Dr. Butler's opinion is inconsistent with his treatment notes. (Doc. No. 24.) But, as the Commissioner concedes, the August 10, 2017 records were signed by a nurse practitioner and not by Dr. Butler. (AR 482.) The Commissioner argues that "it is reasonable to conclude that Dr. Butler conducted this examination" because "the records are from the same facility where [Massey] saw Dr. Butler" and "the substantive findings from the examination were written in handwriting that was consistent with Dr. Butler's based on a review of other records he did sign . . . ." (Doc. No. 24, PageID# 596 n.8.) The Court disagrees. The record supports a finding that Dr. Butler signed the treatment notes for the examinations he performed, as documented by the notes from four examinations in 2017 and 2018. There is no reason to assume that he deviated

from that practice for the August 10, 2017 examination. Further, even if Dr. Butler had documented normal musculoskeletal findings on that one occasion, it would not constitute substantial evidence supporting the ALJ's decision to discredit Dr. Butler's opinion in light of the multiple other occasions when Dr. Butler's treatment notes documented abnormal musculoskeletal findings and corresponding diagnoses. The ALJ's finding that Dr. Butler's medical source statement was inconsistent with his treatment notes is therefore not supported by substantial record evidence.

The ALJ's finding that Dr. Butler's "limitations appear to be based solely on the claimant's subjective complaints" (AR 18) also lacks the support of substantial evidence. Dr. Butler explained in an accompanying letter that his lifting, sitting, standing, and walking limitations for Massey were based on CAT scan findings—findings that Dr. Robinson did not review—and Massey's history of knee pain that did not improve with surgery. (AR 467.) Specifically, Dr. Butler stated that Massey's CAT scans "show[ed] mild to moderate multilevel degenerative changes in the cervical spine most pronounced at the C5–6 level"; "osteophytes in the lower thoracic region with areas of vacuum disc in this region"; "moderate to severe facet abnormalities at L4–5 and L5–S1" in the lumbar spine; "[a] vacuum disc phenomenon . . . at L-5–S1"; and "osteophytes . . . in the lumbar spine as well as mild disc space narrowing in the L-5–S1 area." (*Id.*) Dr. Butler opined that "[s]uch radiologic changes could lead to Ms. Massey having [t]he limitations noted . . . concern[ing] her ability to lift objects, sit, stand or walk for prolonged periods of time." (*Id.*)

The ALJ referred to what appear to be the same imaging results earlier in his written decision, stating that: "[a] CT scan of the cervical spine revealed mild to moderate cervical spondylosis, CT scan of the thoracic spine showed only mild spondylitic changes, and a CT scan of the lumbar spine revealed moderately severe lumbar degenerative disc disease most pronounced

at L5-Sl." (AR 16.) But the ALJ did not acknowledge that Dr. Butler, who ordered the CAT scan, explicitly explained in his letter why the CAT scan results supported his opined functional limitations for Massey. Dr. Butler explained that the CAT scan findings ranged from mild to severe and, in his medical opinion, could support the stated limitations. *Cf. Berryhill v. Colvin*, Civ. Action No. 15-14029, 2017 WL 362669, at *6 (E.D. Mich. Jan. 6, 2017) (finding that "[n]either the ALJ nor this Court have the medical expertise to assess the limitations necessary to account for the combination of [claimant's] discogenic degenerative changes, disc bulge, subluxation deformity, facet hypertrophy, central canal stenosis, thecal sac compression, spondylosis, arthropathy and neural foraminal stenosis, regardless of the fact that each individual finding was described only as mild or moderate"), *report and recommendation adopted sub nom. Berryhill v. Comm'r of Soc. Sec.*, 2017 WL 872664 (E.D. Mich. Mar. 3, 2017). The ALJ's finding that Dr. Butler's limitations were based solely on Massey's subjective complaints therefore lacks the support of substantial record evidence.

The ALJ further found that Dr. Butler's opinion was not persuasive because "the treatment relationship . . . is very limited and appears to be within the scope of the claimant's efforts to obtain disability benefits as opposed to seeking actual ongoing treatment." (AR 18.) The Court finds that this finding also lacks the support of substantial evidence and that the ALJ misapplied the relevant legal standards in reaching it. The administrative record shows that Massey saw Dr. Butler for treatment five times between January 5, 2017, and September 29, 2018. (AR 448–51, 477–80, 497.) The fact that Massey also asked Dr. Butler to submit a medical source statement in support of her SSI claim and mentioned her efforts to obtain disability benefits during her appointments does not undermine the persuasiveness of Dr. Butler's opinion. *See Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011) (holding that "the fact that relevant evidence has been solicited by the

claimant or her representative is not a sufficient justification to belittle or ignore that evidence"). As the Seventh Circuit explained in *Punzio v. Astrue*, "[t]he claimant bears the burden of submitting medical evidence establishing her impairments and her residual functional capacity [under SSA regulations]. How else can she carry this burden other than by asking her doctor to weigh in?" *Id.* (citations omitted). Further, the ALJ's reasoning is inconsistent with his finding that Dr. Robinson's consulting opinion *was* persuasive. The record shows that Massey saw Dr. Robinson on one occasion solely for the purpose of evaluating her functional capacity in the context of her SSI claim, and Dr. Robinson did not review the CAT scan results on which Dr. Butler based his medical opinions. (AR 453–57.)

The Court therefore finds that the ALJ's analysis of Dr. Butler's medical opinion lacks the support of substantial evidence. The Commissioner has not argued that any errors the ALJ made in evaluating Dr. Butler's opinion were harmless, and the Court finds that they were not. The ALJ's decision should therefore be vacated and remanded for reconsideration of Dr. Butler's opinion.

### B.     The ALJ's Analysis of Massey's Ability to Perform Past Relevant Work

Massey further argues that the ALJ erred in finding that she could perform her past relevant work as either a cashier or packager. (Doc. No. 23.) The Commissioner concedes that the ALJ erred in finding that Massey could perform her past work as a cashier, but argues that this error was harmless because the ALJ properly found that Massey could perform her past work as a packager. (Doc. No. 24.) Because Massey's case should be remanded to the ALJ to reconsider Dr. Butler's opinion, the Court need not address this argument. The ALJ will likely need to reevaluate Massey's RFC after properly considering Dr. Butler's opinion and will need to address Massey's ability to perform past relevant work in light of any changes to her RFC. If necessary, Massey may raise this issue again on appeal. *See Dawes v. Saul*, No. 3:19-cv-00001, 2020 WL 587426, at *8 (M.D. Tenn. Feb. 6, 2020), *report and recommendation adopted sub nom. Dawes v.*

17
Case 1:20-cv-00030   Document 26   Filed 08/16/21   Page 17 of 18 PageID #: 627

*Soc. Sec. Admin.*, 2020 WL 906227 (Feb. 25, 2020); *Wilson v. Colvin*, No. 3:13-CV-84, 2014 WL 619713, at *6 (E.D. Tenn. Feb. 18, 2014).

IV.     **Recommendation**

For these reasons, the Magistrate Judge RECOMMENDS that Massey's motion for judgment on the administrative record (Doc. No. 22) be GRANTED, that the ALJ's decision be VACATED, and that this case be REMANDED for further administrative proceedings consistent with this Report and Recommendation.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 16th day of August, 2021.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge